1    JEFFREY N. MAUSNER (State Bar No. 122385)
2    Law Offices of Jeffrey N. Mausner
     Warner Center Towers, Suite 910
3    21800 Oxnard Street
4    Woodland Hills, California 91367-3640
     Telephone: (310) 617-8100, (818) 992-7500
5    Facsimile: (818) 716-2773

6
7    Attorneys for Plaintiff Perfect 10, Inc.

8                 UNITED STATES DISTRICT COURT

9                CENTRAL DISTRICT OF CALIFORNIA

10

11   PERFECT 10, INC., a California          Case No. CV 07-5156 AHM (SHx)
12   corporation,
                    Plaintiff,               **MEMORANDUM OF POINTS AND
13          v.                               AUTHORITIES IN SUPPORT OF
                                             PLAINTIFF PERFECT 10, INC.'S
14                                           MOTION FOR PARTIAL SUMMARY
15   MICROSOFT CORPORATION, a                JUDGMENT AND SUMMARY
     corporation,                            ADJUDICATION AGAINST
16                  Defendant.               DEFENDANT MICROSOFT
17   _____         CORPORATION**

18                                           Date:  March 23, 2009
19                                           Time:  10:00 a.m.
                                             Place: Courtroom 14, Courtroom of the
20                                           Honorable A. Howard Matz
21
22                                           Discovery Cut-Off Date:  None Set
                                             Pretrial Conference Date:  None Set
23                                           Trial Date:  August 11, 2009
24
25
26
27
28
     _____

# **TABLE OF CONTENTS**

I.      INTRODUCTION AND SUMMARY OF ARGUMENT. ...........................1

II.     FACTUAL BACKGROUND. ........................................................................3

      A.      Perfect 10's Business And Intellectual Property. ................................3

      B.      Microsoft Provides Its Users With Unauthorized Access To
              Perfect 10 Images. .............................................................................4

III.    DMCA SAFE HARBOR IS AN AFFIRMATIVE DEFENSE
       WHICH HAS A NUMBER OF REQUIREMENTS THAT MUST
       ALL BE MET FOR ELIGIBILITY. ................................................................6

      A.      Accurate Contact Information For Designated Agent. ........................6

      B.      Expeditious Response To Notifications Of Claimed Infringement. .....7

      C.      Implementation Of Policy Against Repeat Infringers. .........................7

IV.     MICROSOFT IS INELIGIBLE FOR DMCA SAFE HARBOR...................7

      A.      Microsoft Did Not Respond At All To Perfect 10's Notices
              Between October 25, 2004 And March 4, 2007. ................................7

            1.      Microsoft's Listed Facsimile Number Did Not Work For At
                   Least Three Years. ................................................................8

            2.      Microsoft Received Perfect 10's December 8, 2005 and
                   July 16, 2007 Notices by Federal Express, Then Returned
                   Them. ....................................................................................9

            3.      Perfect 10 Sent Eleven DMCA Notices To The Email
                   Address Listed By Microsoft At The Copyright Office,
                   Which Microsoft Did Not Process. ......................................9

      B.      Microsoft Has Not Acted At All With Respect To Massive
               Infringing Pay Site Advertisers. ........................................................11

      C.      Microsoft Continues To Directly Link To The Same Infringing
               Web Pages Identified In Perfect 10's Notices. ..................................12

      D.      Microsoft Continues To Provide Passwords To Perfect10.com
               And Link To Identified Web Pages That Provide Such Passwords. ..13

      E.      Microsoft Continues To Display Infringing P10 Images For
               Which It Has Received Notice From Perfect 10. ...............................13

i

Memorandum of Points and Authorities In Support of  Perfect 10's Motion for
Partial Summary Judgment and Summary Adjudication Against Microsoft

| | | |
|---|---|---|
| | F. | Microsoft Continues To Display Multiple Copies Of The Same Images For Which It Has Received Notice. .......................................14 |
| V. | | THE LEGAL STANDARD FOR SUMMARY JUDGMENT. .................14 |
| VI. | | MICROSOFT IS NOT ENTITLED TO SAFE HARBOR PROTECTION BECAUSE IT HAS FAILED TO COMPLY WITH MULTIPLE REQUIREMENTS OF THE DMCA...........................16 |
| | A. | Microsoft Has Blatantly Failed to Comply With the DMCA Agent Designation Requirements. .......................................17 |
| | B. | Microsoft Has Not Acted Expeditiously To Remove Or Disable Access To Infringing Material. ............................................19 |
| | C. | Microsoft Has Neither Adopted, Nor Reasonably Implemented, A Repeat Infringer Policy. ...............................................20 |
| VII. | | PERFECT 10'S DMCA NOTICES WERE STATUTORILY COMPLIANT..........................................................................21 |
| VIII. | | CONCLUSION. ..........................................................................24 |

ii

Memorandum of Points and Authorities In Support of  Perfect 10's Motion for
Partial Summary Judgment and Summary Adjudication Against Microsoft

1

# <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

*A&M Records, Inc. v. Napster, Inc.,* 2000 WL (N.D. Cal., 2000) ...........................15

4

*Aimster Copyright Litigation,* 252 F.Supp.2d 634 (N.D. Ill. 2002) .......................14

5

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)........................................................14

6

*Ellison v. Robertson,* 357 F.3d 1072 (9th Cir. 2004) ...............................................16

7

<u>*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. (1986)</u> ...........15

8

*UMG Recordings, Inc., v. Veoh Networks, Inc.,* 2008 WL 5423841
(C.D.Cal. 2008)....................................................................................................14

9

10

**Statutes and Regulations**

11

17 U.S.C. §512....................................................................................................passim

12

37 C.F.R. § 201.38.............................................................................................passim

13

**Rules**

14

Fed.R.Civ.P. 56............................................................................................... 14, 15

15

16

17

18

19

20

21

22

23

24

25

26

27

28

iii

Memorandum of Points and Authorities In Support of  Perfect 10's Motion for
Partial Summary Judgment and Summary Adjudication Against Microsoft

# I.     <u>INTRODUCTION AND SUMMARY OF ARGUMENT.</u>

In this motion, Plaintiff  Perfect 10, Inc. ("Perfect 10") seeks partial summary judgment that Defendant Microsoft Corporation ("Microsoft")  is not eligible for the safe harbor provisions of the Digital Millennium Copyright Act (the "DMCA"), because it has failed to act on almost all of Perfect 10's DMCA notices, and for several years did not respond to any of them.  Alternatively, Perfect 10 seeks summary judgment that Microsoft is not entitled to DMCA safe harbor for its alleged contribution to the infringement of Perfect 10 copyrights:

1.     For the period from October 25, 2004 through March 4, 2007, because Microsoft did not respond at all to any of Perfect 10's notices during that period [*see* Notice of Motion, Issue No. 1];

2.     With respect to Perfect 10's notices regarding infringement by pay sites to which Microsoft provides regular links, sponsored links, and/or receives payments, because Microsoft has not acted at all with respect to those sites [*see* Notice of Motion, Issue No. 2]; and

3.     With respect to allegedly infringing web pages to which Microsoft has continued to directly link more than 90 days after receiving notice from Perfect 10, because Microsoft has not responded to such notice expeditiously [*see* Notice of Motion, Issue No. 3].

An online service provider must satisfy a number of statutory requirements in order to be eligible for the affirmative defense of the DMCA safe harbor. During the period from October 25, 2004 through March 4, 2007, Microsoft violated several of those requirements.  First, its listed "Facsimile Number of Designated Agent" at the U.S. Copyright Office admittedly *did not work during that entire time period*, in violation of 17 U.S.C. §512(c)(2)(B) and 37 C.F.R. §201.38(c)(5). [*see* Section IV.A.1, below].  Second, Microsoft failed to process eleven DMCA notices sent by Perfect 10 during that period to the email address which Microsoft listed for its agent at the Copyright Office, namely,

jkweston@microsoft.com. If Microsoft received the emailed notices and chose not to process them, it is disqualified from safe harbor protection under 17 U.S.C. §512(c)(1)(C). Alternatively, if Microsoft did not receive the emails, it is disqualified from safe harbor protection because it provided the Copyright Office with a non-working email address, in violation of 17 U.S.C. §512(c)(2)(A). [*see* Section IV.A.3, below]. Either way, because Microsoft failed to process eleven notices sent to the correct email address, it is disqualified from safe harbor. Third, Microsoft returned two DMCA notices which Perfect 10 sent via Federal Express to the address listed by Microsoft at the Copyright Office, without processing them, in violation of §512(c)(2)(A) and/or §512(c)(1)(C) [*see* Section IV.A.2., below]. Because of these multiple violations, as well as Microsoft's failure to process ***any*** Perfect 10 DMCA notices from at least October 25, 2004 through March 4, 2007, Perfect 10 is entitled to summary judgment on Issue No. 1.

Microsoft also is not entitled to a DMCA safe harbor with respect to Perfect 10's claim of copyright infringement by pay sites that advertise with Microsoft, such as alibis.com, giganews.com, newsdemon.com, newsgroup-binaries.com, newsgroups-download.com, newsgroupdirect.com, newshosting.com, newsrazor.net, and thundernews.com. These sites have cumulatively infringed over 100,000 copies of Perfect 10 copyrighted images ("P10 Images"). Declaration of Dr. Norman Zada, submitted concurrently herewith ("Zada Decl.") ¶¶5, 16, 22, Exhs. 6, 21. It is undisputed that Microsoft has taken no action whatsoever in response to Perfect 10's notices regarding infringing activity on such sites, in violation of §512(c)(1)(C). Accordingly, Microsoft is not entitled to a safe harbor defense and Perfect 10 is entitled to summary judgment on Issue No. 2 [*see* Section IV.B below].

Finally, Microsoft is not entitled to a DMCA safe harbor for continuing to directly link to allegedly infringing web pages more than 90 days after Perfect 10 identified those web pages in its notices. In some cases, Microsoft continues to

1   link to these web pages more than three years after receiving notice.  Microsoft

2   claims that its customer satisfaction policy requires removal of infringements

3   within three days.  Deposition of Judy Weston ("Weston Depo.") 33:24-34:8,

4   attached as Exhibit A to the Declaration of Jeffrey Mausner submitted concurrently

5   herewith ("Mausner Decl.").  Taking more than thirty times that long to act cannot

6   be deemed "expeditious."  Microsoft's failure to expeditiously remove or disable

7   access to such infringing web pages violates §512(c)(1)(C), and entitles Perfect 10

8   to summary judgment on Issue No. 3 [*see* Sections IV.C and IV.D below].

9   **II.    FACTUAL BACKGROUND.**

10          **A.    Perfect 10's Business And Intellectual Property.**

11          Perfect 10 owns the copyrights to valuable, high-quality images of female

12   models ("P10 Images").  Zada Decl. ¶4.  From 1997 through June 2007, Perfect 10

13   was the publisher of the well-known magazine "PERFECT 10."  The magazine

14   contained high-quality, nude or partially nude photographs, of beautiful "natural"

15   models such as *Sports Illustrated* swimsuit cover model/Victoria's Secret model

16   Marisa Miller.  Perfect 10 has been featured in many popular movies and television

17   shows, including "The Sopranos," "Knocked Up," "Superbad," "American Pie,"

18   and "Spiderman II."  Perfect 10 has partnered with the *London Sun* to produce the

19   "London Sun/Perfect 10" search for England's most beautiful natural model.  *Id.*

20   ¶¶3-4.

21          After losing more than $50 million because of rampant infringement, Perfect

22   10 was forced to cease production of the magazine in June 2007 and lay off most

23   of its employees.   Perfect 10 continues to sell back issues of its magazine and run

24   its website, perfect10.com.  *Id.,* ¶3.  Consumers may view more than 15,000 P10

25   Images and videos on the website through an individual, confidential password by

26   paying a monthly fee.  *Id.*¶4.

27

28

1

2

**B.**     <u>Microsoft Provides Its Users With Unauthorized Access To Perfect 10 Images</u>.

3

4

5

Microsoft owns and operates the website msn.com and the search engine that is available from that website.[1]  Microsoft has provided users of its search engine with unauthorized access to P10 Images in at least seven ways:

6

7

8

9

10

11

First, from at least November 2004 to the present, Microsoft offered infringing "thumbnails" of P10 Images to its users on web pages Microsoft created for its Image Search results.  In many cases, the P10 Images created by Microsoft were substantially clearer and larger than the reduced-size images displayed on Perfect 10's website, perfect10.com.  Some were substantially larger than other search engine "thumbnails."  Zada Decl.  ¶5, Exh. 1, page 1.

12

13

14

15

16

Second, Microsoft allowed users who clicked on such Perfect 10 "thumbnails" to view or download full-size P10 Images while remaining at msn.com, through in-line linking or framing.  In some cases, Microsoft links infringing Perfect 10 "thumbnails" to websites that offer more than 17,000 infringing P10 Images.  *Id.* ¶5, Exh. 2.

17

18

19

20

Third, along with its P10 "thumbnails," Microsoft provided users with a "See full-size image" link.  By clicking on this link, Microsoft users are able to view or download full-size P10 Images – the same images that Perfect 10 sells for a living.  Zada Decl. ¶5, Exh. 3.

21

22

23

Fourth, Microsoft offers its users a Web Search function which finds and promotes websites offering free infringing P10 Images ***and*** provides a link which takes its users either directly to those images, or to within one click of such images.

24

25

26

27

28

[1] Andrew Bridges (Microsoft's counsel, not to be confused with Andrew Bridge, the child advocate) recently sent an email to Perfect 10's counsel, Jeffrey Mausner suggesting that Perfect 10 should refer to Microsoft's search engine as Live Search or live.com instead of msn.com.  (Mausner Decl. Exh. D.)  However, because Perfect 10 has always used msn.com to access Microsoft's search engine (which was previously called msn.com), Perfect 10 will continue to use the term "msn.com" to refer to Microsoft's search engine.

Some of the websites to which Microsoft sends its users, such as nudecelebforum.com, phun.org, and imagerise.com, each infringe thousands of P10 Images. Nudecelebforum.com, for example, infringes over 10,000 P10 Images. Zada Decl. ¶18. In addition, Microsoft frequently provides its users with a cache link in conjunction with its Web Search function. This link allows users in certain cases to view and download images from websites that are no longer functioning. Zada Decl. ¶5, Exh. 4. Thus, through its Web Search function, Microsoft both finds infringing content for its users and takes its users directly to that content.

Fifth, Microsoft has linked to more than 45 pay websites, either through premium search result placement (*i.e.,* sponsored links) or through regular search result links. Each of these websites has offered, on average, more than 15,000 pirated Perfect 10 Images. These websites typically charge users a monthly fee of between $10 and $20, and then allow users to illegally download massive quantities of infringing material, including thousands of full-length movies, songs, and images. Moreover, *Microsoft recently has begun to act as an agent* for some of these infringing websites, by placing sponsored links for such websites not only in Microsoft's own search results, but also on other third-party websites such as alexa.com. Perfect 10 cannot possibly compete with these infringing websites, which offer billions of dollars of stolen content, including tens of thousands of infringing P10 Images, for fractions of a penny on the dollar. Zada Decl. ¶¶5, 16-17, Exhs. 6, 21-22.

Sixth, Microsoft has allowed its ads to appear next to P10 Images without permission, and without offering to pay Perfect 10 anything for such use of its images. Zada Decl. ¶5, Exh. 7.

Seventh, Microsoft itself disseminates unique, confidential usernames and passwords for Perfect 10's website, perfect10.com, in the snippets of text that it provides in its search results. These usernames and passwords allow users to gain

1   unauthorized access to perfect10.com.  Microsoft also links to websites that

2   provide such unauthorized passwords.  Unauthorized passwords disseminated by

3   Microsoft and others have been used to illegally download more than 3 million

4   P10 Images since July 2007.  Zada Decl. ¶23. Exh. 26.

5       As discussed in greater detail below, despite repeated notice from Perfect 10,

6   Microsoft continues to perform these infringing acts.  Zada Decl. ¶¶19-23, Exhs.

7   24-26, 5-6.

8   **III.   DMCA SAFE HARBOR IS AN AFFIRMATIVE DEFENSE WHICH**

9        **HAS A NUMBER OF REQUIREMENTS THAT MUST ALL BE**

10       **MET FOR ELIGIBILITY.**

11       **A.    Accurate Contact Information For Designated Agent.**

12       In order to qualify for the safe harbor affirmative defense set forth in the

13  DMCA, a service provider such as Microsoft must satisfy several statutory

14  requirements.  First, the DMCA's safe harbor protections "apply to a service

15  provider *only if the service provider has designated an agent to receive*

16  *notifications of claimed infringement ... by providing to the Copyright Office,*

17  *substantially the following information: (A) the name, address, phone number, and*

18  *electronic mail address of the agent.*"  17 U.S.C. §512(c)(2)(A) (emphasis added).

19       Second, the service provider must provide "*other contact information which*

20  *the Register of Copyrights may deem appropriate.*"  17 U.S.C. §512(c)(2)(B)

21  (emphasis added).  Under this provision, the Copyright Office has required service

22  providers to provide the facsimile number of the copyright agent.  The Code of

23  Federal Regulations, 37 C.F.R. §201.38, requires that "An 'Interim Designation of

24  Agent to Receive Notification of Claimed Infringement' … shall include the

25  following information with respect to a single service provider: … (5) The

26  telephone number, *facsimile number,* and *electronic mail address* of the agent

27  designated to receive notification of claimed infringement." (Emphasis added).

28  That information is also required in the form for copyright agents provided by the

1   Copyright Office.  Zada Decl. Exh. 8.

2       **B.     Expeditious Response To Notifications Of Claimed Infringement.**

3       Third, under §512(c)(1)(C), the service provider must, "upon notification of

4   claimed infringement as described in paragraph (3), respond expeditiously to

5   remove, or disable access to, the material that is claimed to be infringing or to be

6   the subject of infringing activity."

7       **C.     Implementation Of Policy Against Repeat Infringers.**

8       Fourth, a service provider must reasonably implement a policy against

9   repeat infringers.  17 U.S.C. §512(i).

10  **IV.    MICROSOFT IS INELIGIBLE FOR DMCA SAFE HARBOR.**

11      Because Microsoft has failed to provide accurate contact information for its

12  designated agent, and has also failed to expeditiously respond to Perfect 10's

13  DMCA notices, this Court can decide the Motion and grant summary judgment in

14  favor of Perfect 10 on the three issues identified in Perfect 10's Notice of Motion,

15  without deciding whether Perfect 10's notices were statutorily compliant.

16  Nevertheless, Perfect 10 does show that its notices were compliant, in Section VII

17  below.

18      **A.     Microsoft Did Not Respond At All To Perfect 10's Notices**

19              **Between October 25, 2004 And March 4, 2007.**

20      During the period from October 25, 2004 through March 4, 2007, after

21  trying to send notices by facsimile, Perfect 10 sent eleven DMCA notices to

22  Microsoft by email and Federal Express.  The undisputed facts submitted by

23  Perfect 10 in support of this Motion demonstrate either that: (i) Microsoft failed to

24  receive these DMCA notices because it failed to comply with the designation of

25  agent requirements of the DMCA; or (ii) Microsoft received these notices but

26  chose not to process them.  In either case, Microsoft is ineligible for a DMCA safe

27  harbor.

28

### 1. **Microsoft's Listed Facsimile Number Did Not Work For At Least Three Years.**

Perfect 10 attempted to fax nine DMCA notices to Microsoft during the period from October 25, 2004 through March 4, 2007, using the number Microsoft listed at the Copyright Office. None of the faxes went through. Zada Decl. ¶6; Exhs. 9, 10.

There is no dispute that Microsoft's listed fax number at the Copyright Office, (425) 936-4112, did not work during this entire period, for more than three years, from at least January 1, 2004 through March 4, 2007. Microsoft has admitted in its interrogatory responses that the number did not work after 2003. *See* Microsoft Corporation's Response to Plaintiff's Corrected Interrogatory 3, First Set of Interrogatories to Defendant Microsoft Corporation (**"Microsoft also may not have received any communications faxed to 425-936-4112 in the years 2004, 2005, and 2006, because that phone number, while once a Microsoft number, stopped being associated with Microsoft after 2003."** Mausner Decl., Exh. C, page 3 lines 21-23 [emphasis added]). Moreover, Perfect 10 was unable to send a DMCA notice via fax to Microsoft at its listed fax number as late as March 4, 2007. Zada Decl. ¶6, Exh. 10. The Copyright Office, in its form for designated copyright agents, requires a search provider to provide a valid "Facsimile Number of Designated Agent." Zada Decl. Exh. 8; 17 U.S.C. §512(c)(2)(B). A valid fax number is also required by the Code of Federal Regulations, 37 C.F.R. §201.38(f). Nevertheless, Microsoft did not file a corrected facsimile number with the Copyright Office until February 21, 2008 for msn.com, and until March 30, 2007 for Microsoft. Zada Decl. ¶6, Exh. 8, pages 1-4. [2]

---

[2] 37 C.F.R. §201.38 (f) provides: "Amendments. In the event of a change in the information reported in an Interim Designation of Agent to Receive Notification of Claimed Infringement, a service provider shall file with the Copyright Information Section an amended Interim Designation of Agent to Receive Notification of Claimed Infringement, containing the current information required by §201.38(c)." The Copyright Office instructions for Online Service Providers states: "The fact that the Office has accepted a designation of an agent and has included it in the

1

**2.     Microsoft Received Perfect 10's December 8, 2005 and July**

2

**16, 2007 Notices by Federal Express, Then Returned Them.**

3

On December 8, 2005, Perfect 10 sent a DMCA notice via Federal Express

4

to the "Full Address of Designated Agent to which Notification Should be Sent,"

5

which Microsoft listed at the Copyright Office.  There is no dispute that Microsoft

6

received this package on December 9, 2005, did not process the notice, and then

7

returned the notice back to Perfect 10 on December 19, 2005, ten days later.  On

8

July 16, 2007, Perfect 10 sent another notice by Federal Express to the same

9

address, which Microsoft returned to Perfect 10 on July 27, 2007, again without

10

processing. Zada Decl. ¶¶8-9, Exh. 13.  Under these circumstances, there can be

11

no doubt that Microsoft did not expeditiously remove or disable access to

12

identified infringing material as required by §512(c)(1)(C).  Microsoft also cannot

13

claim that it was not aware that Perfect 10 was attempting to send it DMCA notices

14

as early as December 8, 2005.

15

**3.     Perfect 10 Sent Eleven DMCA Notices To The Email**

16

**Address Listed By Microsoft At The Copyright Office,**

17

**Which Microsoft Did Not Process.**

18

It is also indisputable that Perfect 10 sent eleven notices by email, to the

19

"Email Address of Designated Agent" listed by Microsoft at the Copyright Office,

20

jkweston@microsoft.com, which Microsoft has failed to process.  Dr. Zada sent

21

those emails between October 25, 2004 and March 4, 2007, and did not receive any

22

error messages.  Zada Decl. ¶6, Exh. 11.  Perfect 10 has email receipts showing

23

emails sent to jkweston@microsoft.com on October 25, 2004, February 2, 2005,

24

February 20, 2005, April 20, 2005, July 13, 2005, October 19, 2005, December 21,

25

2005, December 28, 2005 (in connection with the notice sent by Federal Express

26

on December 8, 2005 which Microsoft returned), January 8, 2006, November 1,

27

28

Office's directory of agents should not be construed as a judgment by the Office
that the designation is sufficient or error-free."  *See* copyright.gov/onlinesp/.

2006, February 8, 2007, and March 4, 2007.  The notices that were emailed were sent on the same days Perfect 10 attempted to fax those notices.  Perfect 10 also has three email server logs showing that emails were sent from Perfect 10 and were *received by Microsoft's server* on November 1, 2006, February 8, 2007, and March 4, 2007.  The email server logs further show that Microsoft's server queued the emails for delivery to jkweston@microsoft.com, and verified that the address jkweston@microsoft.com was an email address at microsoft.com.  Declaration of Sean Chumura, submitted concurrently herewith, ¶¶3-5, Exh. 1;  Zada Decl. ¶¶6-10, Exhs. 9-14.

Microsoft has no evidence to the contrary.  The person who would know whether Microsoft received such emails, Judy Weston, testified at her deposition that she didn't recall whether she received them or not.  Microsoft stated in its interrogatory responses that it did not receive notices by email from Perfect 10 in 2004, 2005, or 2006.  (Microsoft Corporation's Response to Plaintiff's Interrogatories, Interrogatory 3, attached as Exhibit B to Mausner Decl., page 4, lines 23-26.).  However, in response to the following question regarding that interrogatory response, "Now, is it true that Microsoft did not receive notices from Perfect 10 in 2004, 2005, and 2006?"  Ms. Weston responded, "I believe I answered that previously, *I don't know what Microsoft did or did not receive in those years.*"  (Emphasis added).  In response to the follow up question, "And you don't know whether you yourself received any notices from Perfect 10 in those years?"  Ms. Weston responded, "I don't recall whether I did."  In response to the next question, "So how can Microsoft make the statement [in its interrogatory response] that it did not receive notices from Perfect 10 in 2004, 2005, and 2006?"  Ms. Weston responded, "I didn't author this document; I can't answer that question."  Weston Depo, 190:7-191:8.[3]

---

[3] Pages from the transcript of the deposition of Judy Weston are attached to the Mausner Declaration, submitted concurrently, as Exhibit A.

1    In summary, it is undisputed that Microsoft did nothing in response to

2    Perfect 10's DMCA notices which were sent to the correct email address from

3    October 25, 2004, through March 4, 2007.  Although Perfect 10 has produced

4    irrefutable evidence that emails were sent to jkweston@microsoft.com, for the

5    purposes of this Motion, it should not matter.   Either Microsoft did not receive the

6    emails, in which case it had a non-working email address and is ineligible for

7    DMCA safe harbor, or it simply chose to ignore the notices, which would also

8    make it ineligible.  In either event, Perfect 10 is entitled to partial summary

9    judgment on Issue No. 1 of the Motion.

10   **B.    Microsoft Has Not Acted At All With Respect To Massive**

11   **Infringing Pay Site Advertisers.**

12   There is no dispute that Microsoft has received Perfect 10 notices dated

13   December 8, 2005, March 27, 2007, June 7, 2007, July 16, 2007, December 26,

14   2007, and June 2, 2008.  These notices contain over 100,000 copies of stolen

15   Perfect 10 copyrighted images being offered for sale by Microsoft advertisers.

16   Zada Decl. ¶18.  There is also no dispute that Microsoft has done nothing in

17   response to these notices.  In fact, Ms. Weston testified that *she did not even look*

18   *at a number of the massive infringing websites that Perfect 10 complained about* in

19   its notices.  For example, in response to the question, "But you did not think it was

20   necessary to look at giganews.com after you received Perfect 10's notices?" Ms.

21   Weston responded, "No.  I didn't believe it was necessary for me to look at the

22   Web site."  Weston Depo.  219:12-18; 217:4-8; 217:25-218:3; 218:22-25.  As of

23   January 19, 2009, Microsoft was continuing to provide sponsored links to at least

24   ten massive infringing pay sites that Perfect 10 had repeatedly complained about,

25   and appears to have even *increased its involvement* with these sites by providing

26   sponsored links on their behalf to third-party websites such as alexa.com.  Zada

27   Decl. ¶¶5, 16, 22, Exhs. 6, 21.   Microsoft is also providing thousands of free links

28   to such infringers.  For example, as of January 19, 2008, Microsoft was providing

17,300 web search links to its advertising affiliate, giganews.com.  Zada Decl. ¶29, Exh. 29.

Some of Microsoft's advertisers, such as giganews.com, are involved in arguably the greatest theft of all time.  They have stolen most major full length movies, songs, most images, and even computer software, worth tens of billions of dollars.  They are doing tremendous damage to the entertainment community, whose livelihood depends on a vibrant market for its movies and songs. Microsoft's willingness to partner with such criminals to help them profit from massive theft is morally repugnant and should not be tolerated by this Court. Microsoft has violated Section 512(c)(1)(C) of the DMCA by not responding expeditiously to remove, or disable access to, the material that is claimed to be infringing or to be the subject of infringing activity, after receiving Perfect 10's notices.  Accordingly, Perfect 10 is entitled to partial summary judgment with respect to Issue 2 of the Motion.

C. **Microsoft Continues To Directly Link To The Same Infringing Web Pages Identified In Perfect 10's Notices.**

Although Microsoft has claimed that it did not receive Perfect 10's notices sent from October 25, 2005 through March 4, 2007, it is undisputed that Perfect 10 produced those notices to Microsoft in discovery on June 3, 2008.  Zada Decl. ¶19. Nevertheless, Microsoft is continuing to directly link to infringing web pages repeatedly identified by Perfect 10, both in notices sent prior to March 5, 2007, and in later notices.  For example, Perfect 10 first identified the infringing URL, celebstation.org/models/ monika_zsibrita.php, to Microsoft in its October 25, 2004 notice.  *It then identified that same infringing URL to Microsoft in its June 7, 2007, and June 2, 2008 notices.*   Nevertheless, as of February 3, 2009, **more than four years after Perfect 10's first notice**, Microsoft is continuing to directly link to that infringing web page in its Web search results.  Zada Decl. ¶¶19-21, Exhs. 24-25. As a second example, Perfect 10 identified the infringing URL

beautifulwallpaper.com/monika_zsibrita.shtml in its January 8, 2006 notice, and *then again in its June 2, 2008 notice*. Nevertheless, as of February 3, 2009, more than three years after Perfect 10's first notice, Microsoft is still directly linking to that infringing web page. Zada Decl. ¶19, Exh. 24. Both web pages contain images in Perfect 10's Sample of 59 images that was ordered by the Court. *See also*, Zada Decl. ¶¶19-21 (identifying more examples of Microsoft's failure to stop directly linking to identified infringing web pages).

> **D.** **Microsoft Continues To Provide Passwords To Perfect10.com**
> **And Link To Identified Web Pages That Provide Such Passwords.**

        In addition to directly linking to identified web pages that infringe Perfect 10's copyrights, Microsoft is also continuing to directly link to web pages that disseminate perfect10.com passwords, even though Perfect 10 has repeatedly identified these web pages in its DMCA notices to Microsoft. For example, Perfect 10 provided notice to Microsoft on January 8, 2006, that the web page pass.nejcpass.com/password_nejcpass009.html was disseminating unauthorized passwords to perfect10.com. Nevertheless, as of February 3, 2009, more than three years later, Microsoft is continuing to directly link to that web page, as well as multiple other identified web pages of that site. Zada Decl. ¶¶19, 23, Exhs. 5, 24, 26. Moreover, Microsoft continues to disseminate perfect10.com passwords itself, in search results on its own website, despite repeated notice from Perfect 10. Passwords disseminated by Microsoft and others have been used to make at least 3,000,000 unauthorized downloads of P10 Images from perfect10.com since July of 2007. Zada Decl. ¶¶5, 23, Exhs. 5, 26.

> **E.** **Microsoft Continues To Display Infringing P10 Images For**
> **Which It Has Received Notice From Perfect 10.**

        In addition to directly linking to the same infringing web pages in its Web Search results for which it has received notice, Microsoft is also continuing to display copies of the same P10 Images for which it has received notice in its Image

1   Search results.  Zada Decl.  ¶¶24-25, Exhs. 1, 19, 24, 27.  Because Microsoft is

2   continuing to make thumbnails of, display, and link to images for which it has

3   received notice, it has not removed or disabled access to the allegedly infringing

4   material identified by Perfect 10, as required by §512(c)(1)(C).

**F.     Microsoft Continues To Display Multiple Copies Of The Same Images For Which It Has Received Notice.**

7   Perfect 10 very recently learned of a Microsoft Image Search function called

8   "show similar images," which appears to utilize image recognition.  When Perfect

9   10 used that Microsoft feature, Microsoft displayed, in some cases, nine copies of

10  the same infringing P10 Image, which Microsoft linked to different infringing

11  websites.  Zada Decl. ¶5, Exh. 1.  Even though Perfect 10 has provided Microsoft

12  with repeated notice of infringements of those same P10 Images in various DMCA

13  notices, Microsoft is continuing to make thumbnails of those images and display

14  multiple copies of those images.  Zada Decl. ¶¶5, 24-25, Exhs. 1, 27.

**V.     THE LEGAL STANDARD FOR SUMMARY JUDGMENT.**

16  Summary judgment is appropriate when "the pleadings, depositions,

17  answers to interrogatories, and admissions on file, together with the affidavits, if

18  any, show that there is no genuine issue as to any material fact and that the moving

19  party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  The moving

20  party bears the initial burden of identifying evidence that demonstrates the absence

21  of a genuine issue of material fact.  Once the movant has met its burden, it is

22  incumbent upon the nonmoving party to set forth specific facts showing that there

23  is a genuine issue for trial.  If the non-movant fails to make a sufficient showing

24  regarding an essential element of its case, summary judgment must be granted.

25  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).

26  DMCA safe harbor is an affirmative defense.  *UMG Recordings, Inc., v.*

27  *Veoh Networks, Inc*., 2008 WL 5423841 at *1 (C.D.Cal. 2008);  *In re Aimster*

28  *Copyright Litigation,* 252 F.Supp.2d 634, 657 (N.D. Ill. 2002) ("Liability

protection under the DMCA is an affirmative defense and, as such, Defendants

bear the burden of establishing its applicability.”); *A&M Records, Inc. v. Napster,*

*Inc.,* 2000 WL 573136 at *6, 54 U.S.P.Q.2d 1746 (N.D. Cal., 2000). “[W]hen the

non-moving party bears the burden of proving the claim or defense, the moving

party can meet its burden by pointing out the absence of evidence from the non-

moving party. The moving party need not disprove the other party's case. *See*

*Celotex,* 477 U.S. at 325.” *Veoh,* 2008 WL 5423841 at *4.

As this Court has stated:

> When the moving party meets its burden, the “adverse party
> may not rest upon the mere allegations or denials of the adverse
> party's pleadings, but the adverse party's response, by affidavits or as
> otherwise provided in this rule, must set forth specific facts showing
> that there is a genuine issue for trial.” Fed.R.Civ.P. 56(e). Summary
> judgment will be entered against the non-moving party if that party
> does not present such specific facts. *Id.*
> …
> [T]he non-moving party must come forward with more than
> ‘the mere existence of a scintilla of evidence.’ *Anderson,* 477 U.S. at
> 252. Thus, ‘[w]here the record taken as a whole could not lead a
> rational trier of fact to find for the nonmoving party, there is no
> genuine issue for trial.’ *Matsushita Elec. Indus. Co., Ltd. v. Zenith*
> *Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538
> (1986) (citation omitted).

*Veoh,* 2008 WL 5423841 at *5.

Because safe harbor protection is an affirmative defense, Microsoft has the

burden of establishing that it meets all of the requirements for safe harbor set forth

in 17 U.S.C. §512. As explained below, Perfect 10 is entitled to summary

judgment on Issue No. 1 of the Motion because it is undisputed that a) Microsoft's

listed facsimile number at the Copyright Office did not work for at least the period

from October 25, 2004 through March 4, 2007 [*see* Section IV.A.1]; b) Microsoft

returned notices Perfect 10 sent by Federal Express to the address listed at the

Copyright Office [*see* Section IV.A.2]; and c) Microsoft did not process eleven

DMCA notices sent by Perfect 10 to Microsoft's listed email address [*see* Section

IV.A]. Perfect 10 is entitled to summary judgment on Issue No. 2 of the Motion

because it is undisputed that Microsoft has done nothing in response to Perfect 10's

1   notices regarding infringing pay sites, to which Microsoft links and/or receives

2   advertising payments. [*see* Section IV.B].  Finally, Perfect 10 is entitled to

3   summary judgment on Issue No. 3 of the Motion because Microsoft has admittedly

4   received notices but did not remove direct links to identified infringing web pages

5   within 90 days [*see* Sections IV.C and IV.D].

## VI.   MICROSOFT IS NOT ENTITLED TO SAFE HARBOR PROTECTION BECAUSE IT HAS FAILED TO COMPLY WITH MULTIPLE REQUIREMENTS OF THE DMCA.

9       Defendants have held Perfect 10 to the strictest compliance with Section

10  512.  The same should be required of the defendants.  The Ninth Circuit's ruling in

11  *Ellison v. Robertson,* 357 F.3d 1072 (9th Cir. 2004) demonstrates how seriously

12  the Ninth Circuit views a service provider's failure to comply with the registration

13  and repeat infringer provisions of the DMCA.  *Ellison* is a case involving vastly

14  less egregious conduct by the service provider than Microsoft's conduct here.

15      Harlan Ellison, a science fiction writer, sued America Online Inc. ("AOL")

16  for copyright infringement, alleging that AOL had temporarily stored a third-

17  party's posts of his novel on AOL's USENET servers.  On April 17, 2000, before

18  filing suit, Ellison's attorney sent an email message to AOL to notify it of the

19  infringing activity.  However, AOL claimed never to have received the email.  357

20  F.3d at 1075.  As the Ninth Circuit explained:

> AOL changed its contact email address from 'copyright@aol.com' to 'aolcopyright@aol.com' in the fall of 1999, but waited until April 2000 to register the change with the U.S. Copyright Office.  Moreover, AOL failed to configure the old e-mail address so that it would either forward messages to the new address or return new messages to their senders.  In the meantime, complaints such as Ellison's went unheeded, and complainants were not notified that their messages had not been delivered.

25  *Id.* at 1077.  One week after sending notice, on April 24, 2000, Ellison sued AOL.

26  "*Upon receipt of Ellison's complaint*, AOL blocked its subscribers' access to the

27  news-group at issue."  *Id.* at 1075 (emphasis added).  The district court

28  subsequently granted summary judgment in favor of AOL "because it held that

1   AOL qualified for the DMCA safe harbor limitation of liability under 17 U.S.C. §

2   512(a)." *Id.* at 1074.

3          Relying upon AOL's delay in correcting its listed email address, the Ninth

4   Circuit reversed the district court's grant of summary judgment to AOL:

5          We hold that the district court erred in concluding on summary
       judgment that AOL satisfied the requirements of § 512(i). There is at
6      least a triable issue of material fact regarding AOL's eligibility for the
       safe harbor limitations of liability in this case. Section 512(i)(1)(A)
7      requires service providers to: (1) adopt a policy that provides for the
       termination of service access for repeat copyright infringers in
8      appropriate circumstances; (2) implement that policy in a reasonable
       manner; and (3) inform its subscribers of the policy. It is difficult to
9      conclude as a matter of law, as the district court did, that AOL had
       "reasonably implemented" a policy against repeat infringers. **There is**
10     **ample evidence in the record that suggests that AOL did not have**
       **an effective notification procedure in place at the time the alleged**
11     **infringing activities were taking place. Although AOL did notify**
       **the Copyright Office of its correct e-mail address before Ellison's**
12     **attorney attempted to contact AOL and did post its correct e-mail**
       **address on the AOL website with a brief summary of its policy as**
13     **to repeat infringers, AOL also: (1) changed the e-mail address to**
       **which infringement notifications were supposed to have been sent;**
14     **and (2) failed to provide for forwarding of messages sent to the**
       **old address or notification that the e-mail address was inactive.**
15     *See  Ellison,* 189 F.Supp.2d at 1057-58. AOL should have closed the
       old e-mail account or forwarded the e-mails sent to the old account to
16     the new one. Instead, AOL allowed notices of potential copyright
       infringement to fall into a vacuum and to go unheeded; that fact is
17     sufficient for a reasonable jury to conclude that AOL had not
       reasonably implemented its policy against repeat infringers.  [357
18     F.3d at 1080 (emphasis added).]

19     **A.**      **Microsoft Has Blatantly Failed to Comply With the DMCA Agent**

20              **Designation Requirements.**

21          Microsoft's failure to comply with the provisions of the DMCA is vastly

22   more egregious than that of AOL.  AOL failed to provide the Copyright Office

23   with its correct email address between the fall of 1999 and April 2000, but notified

24   the Copyright Office of its correct email address ***before*** Ellison's attorney

25   attempted to contact AOL. 357 F.3d at 1080.   There was no allegation that AOL

26   provided an incorrect facsimile number or mailing address.

27          In contrast, Microsoft admittedly provided the Copyright Office with a non-

28

working fax number *for more than three years,*[4] returned two packages sent to it by Federal Express without processing them, and either provided the Copyright Office with a non-working email address *for more than three years* or blatantly ignored the eleven DMCA notices sent to it by email during the period from October 25, 2004 to March 4, 2007.

Furthermore, whereas AOL took action upon receipt of Ellison's complaint, 357 F.3d at 1075, Microsoft has not processed most of Perfect 10's notices, in some cases for over four years. Zada Decl. ¶¶19-23, Exhs. 6, 24-25. Microsoft's disregard for the intellectual property rights of others is even more unpalatable given its public statements that it is protective of copyright, and different from Google, who it accuses of systematically violating the rights of others. *See* Exhibit E to Mausner Decl.[5]

---

[4] Microsoft did not correct its listed fax number for msn.com until February 21, 2008, more than three years after Perfect 10 began sending it notices, and more than four years after the number stopped working. In fact, Microsoft did not change this number for almost a year after it knew that it was listing a non-working number, since Microsoft changed its listing for Microsoft Corporation almost a year earlier, on March 30, 2007. Zada Decl. ¶6, Exh. 8 pages 2 and 4. Microsoft also did not respond to Perfect 10's October 25, 2004 email notice, in which Perfect 10 advised Microsoft that its fax was not working. Zada Decl. ¶7 Exh. 12.

[5] Microsoft has publicly made the following statements:

[With regard to book search] Google has chosen the wrong path for the longer term, because it systematically violates copyright and deprives authors and publishers of an important avenue for monetizing their works.

Another example is equally disturbing. Microsoft was surprised to learn recently that Google employees have actively encouraged advertisers to build advertising programs around key words referring to pirated software, including pirated Microsoft software. And we weren't the only victims – Google also encouraged the use of keywords and advertising text referring to illegal copies of music and movies.

… Congress in enacting the Copyright Act placed the burden on those who want to copy to get the express consent of the copyright owner, rather than the other way around.

We as a society have a compelling interest in ensuring that those who profit from providing access to online content do not infringe the rights of content creators themselves.

Footnote continued on next page

---

**B.     Microsoft Has Not Acted Expeditiously To Remove Or Disable Access To Infringing Material.**

In addition to satisfying agent designation requirements, in order to qualify for the safe harbor provisions of the DMCA, a service provider must "act[] expeditiously to remove, or disable access to, the [alleged infringing] material."  17 U.S.C. § 512(c)(1)(A)(iii).  A similar requirement is set forth in §512(c)(1)(C).  As set forth above, Microsoft cannot meet this burden for any of the notices that Perfect 10 attempted to fax to Microsoft's non-working fax number, notices that Perfect 10 emailed to the listed email address at the Copyright Office that Microsoft now claims it didn't receive, or notices that were Federal Expressed to Microsoft but returned.

Even if Microsoft could survive its multiple agent designation violations, and explain away its failure to respond to eleven notices emailed to its listed email address at the Copyright Office (which it cannot), Microsoft would still not qualify for a safe harbor because *it has failed in multiple ways to remove or disable access to infringing material for which it has admittedly received notice.*

As explained in Section IV.B, above, it is undisputed that Microsoft has received DMCA notices from Perfect 10 identifying copies of stolen P10 Images being offered for sale by pay sites that Microsoft provides sponsored links and regular links to.  It is also undisputed that Microsoft has done nothing in response to these notices.  *Microsoft has even increased its involvement with such massive infringers* by placing sponsored links for them on third-party websites such as alexa.com.  Zada Decl., ¶¶5, 16, 22, Exhs. 6, 21.  Accordingly, Perfect 10 is entitled to summary judgment on Issue No. 2 of the Motion.

We firmly believe that expanding access to online content must be done in a way that respects intellectual property rights and fairly compensates the content creator for their work.

Entire Web sites have been stolen and merged into perpetrators' properties, instantly giving rogue sites a lofty position in search engine rankings.

1    Moreover, as explained in Sections IV.C. through IV.F. above, Microsoft

2    has failed to act expeditiously to remove or disable access to other allegedly

3    infringing material about which Perfect 10 has complained.  First, Microsoft has

4    failed to remove identified links to infringing web pages for which it has

5    admittedly received notice.  Zada Decl. ¶¶19-23, Exhs. 5-6, 24-26.  Second,

6    Microsoft continues to disseminate confidential perfect10.com passwords and

7    usernames on msn.com, and continues to provide identified links to websites which

8    unlawfully disseminate such passwords.  Zada Decl. ¶¶5, 15, 23, Exhs. 5, 20, 26.

9    Third, Microsoft continues to make and display multiple copies of the same P10

10   Images for which it has received notice.  Zada Decl. ¶¶24-25, Exh.  27.  Fourth,

11   Microsoft has placed ads next to full-size P10 Images for which it has received

12   notice, without asking Perfect 10 for permission or offering to compensate Perfect

13   10 in any way.  Zada Decl. ¶5, Exh. 7.  Such conduct establishes that Microsoft

14   cannot meet the Section 512 requirement of expeditiously removing or disabling

15   access to infringing material.  Accordingly, Perfect 10 is entitled to summary

16   judgment on Issue No. 3 of the Motion.

17      **C.      Microsoft Has Neither Adopted, Nor Reasonably Implemented, A**

18              **Repeat Infringer Policy.**

19   Yet another independent reason to deny Microsoft the safe harbor

20   protections of the DMCA is Microsoft's failure to adopt and reasonably implement

21   a repeat infringer policy.  Subsection 512(i)(1)(A) of the DMCA provides, in

22   relevant part, that:

23       The limitations on liability established by this section shall apply to a
         service provider only if the service provider . . . has adopted and
24       reasonably implemented, and informs subscribers and account holders
         of the service provider's system or network of, a policy that provides
25       for the termination in appropriate circumstances of subscribers and
         account holders of the service provider's system or network who are
26       repeat infringers …

27   Even though Ms. Weston was designated by Microsoft in its interrogatory

28   responses as the person in charge of implementing Microsoft's repeat infringer

1  policy (*see* Microsoft Corporation's Response to Plaintiff's First Set of

2  Interrogatories, p. 2 line 26 to p. 4 line 9, attached as Exh. B to Mausner Decl.),

3  Ms. Weston did not know what a repeat infringer policy was, who was in charge of

4  implementing it, or what it said.  Weston Depo. 70:8-10; 71:19-72:12; 72:24-73:3.

5  Ms. Weston also testified that 1) she did not know whether she received any

6  DMCA complaints in 2004, 2005, or 2006.  *Id.* 42:25-43:12;  2) she did not know

7  when Microsoft first started removing links in its search engine results in response

8  to notices of infringement.  *Id.* 40:13-18; 163:11-15;  3) she did not know who was

9  in charge of DMCA compliance at Microsoft.  *Id.* 165:25-166:7;  4) she did not

10  keep any records of who the alleged infringer was (for purposes of repeat

11  infringer).  *Id.* 203:17-24;  5) she had no idea what Microsoft had done to reduce

12  damage to Perfect 10's copyrighted works.  *Id.* 220:4-9; and 6) Microsoft did not

13  keep a DMCA log.  *Id.* 39:3-8.  Microsoft's failure to keep any records regarding

14  repeat infringers, its refusal to take action against massive infringing advertisers,

15  its failure to process Perfect 10's notices for years, and its multiple failures to

16  provide correct information regarding its designated agent, compel the conclusion

17  that no reasonable jury could find that Microsoft had reasonably implemented a

18  repeat infringer policy.  *See Ellison v. Robertson, supra.*

19  **VII.  PERFECT 10'S DMCA NOTICES WERE STATUTORILY**

20  **COMPLIANT.**

21  The Court can determine that Microsoft does not qualify for a DMCA safe

22  harbor without ruling as to whether Perfect 10's notices were DMCA compliant,

23  on the basis of Microsoft's failure to process over two years' of notices sent to its

24  listed email address, its provision of a non-working fax number for over 3 years,

25  and its return of notices sent to it by Federal Express.  These are all violations of

26  17 U.S.C. §§512(c)(2) (A) and (B), and 37 C.F.R. § 201.38, regardless of whether

27  the notices were compliant.  However, there are several reasons why Perfect 10's

28  notices were compliant, as explained below.  Furthermore, Microsoft was under an

1  obligation, based on §512(c)(3)(B)(ii), to contact Perfect 10 to correct alleged

2  deficiencies in its notices.[6]  Judy Weston, Microsoft's copyright agent, confirmed

3  Microsoft's policy to contact copyright holders if notices could not be processed.

4  Specifically, in response to the question, "What do you do if a complaint is not

5  compliant?" Ms. Weston responded, "I communicate with the complaining party to

6  get any additional information that we need so that it is compliant and that we have

7  information necessary to take action."  Weston Depo. 66:5-10; 19:9-15.  Because

8  Ms. Weston did not do that, Microsoft cannot claim that Perfect 10's notices were

9  deficient.  Weston Depo. 141:15-22.

10      Since October 25, 2004, Perfect 10 has sent Microsoft 16 detailed DMCA

11  notices.  These notices identified: (i) tens of thousands of free, full-size, infringing

12  P10 Images on websites to which Microsoft linked and/or copied images for its

13  Image Search results; and (ii) over 1 million copies of infringing P10 Images on

14  pay sites to which Microsoft linked and/or had business relationships.  Zada Decl.

15  ¶¶7-9, 12-18,  Exhs. 12-13, 16-23.

16      1.  Perfect 10's notices complied with the relevant statutory requirements of

17  the DMCA, which, according to 17 U.S.C. § 512(c)(3), are:

18
19  (i)  A physical or electronic signature of a person authorized to act on behalf
    of the owner of an exclusive right that is allegedly infringed.

20  (ii)  Identification of the copyrighted work claimed to have been infringed,
21  or, if multiple copyrighted works at a single online site are covered by a
    single notification, a representative list of such works at that site.

22  (iii)  Identification of the material that is claimed to be infringing or to be the
23  subject of infringing activity and that is to be removed or access to which is
    to be disabled, and information reasonably sufficient to permit the service
    provider to locate the material.

24  (iv)  Information reasonably sufficient to permit the service provider to
25  contact the complaining party, such as an address, telephone number, and, if
26  available, an electronic mail address at which the complaining party may be
    contacted.

27
_____

[6] 17 U.S.C §512(c)(3)(B)(ii) requires the service provider to contact the copyright
28  holder to cure alleged deficiencies.

(v)  A statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law.

(vi)  A statement that the information in the notification is accurate, and under penalty of perjury, that the complaining party is authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.

There is no dispute that Perfect 10's notices satisfied subsections (i), (iv), (v), and (vi), because they contained: (i) a physical or electronic signature of Dr. Zada; (iv) information reasonably sufficient to permit Microsoft to contact Perfect 10; (v) a statement that Dr. Zada, on behalf of Perfect 10, had a good faith belief that use of the material in the manner complained of was not authorized; and (vi) a statement that the information in each notice was accurate, and under penalty of perjury, that Dr. Zada is authorized to act on behalf of Perfect 10.  *See, e.g.,* Zada Decl., Exh. 12, page 2; Exh. 21, page 4; Exh. 22, page 3.

To satisfy the remaining two subsections, (ii) and (iii), Perfect 10 initially sent notices to Microsoft based on instructions provided by Google.  Perfect 10 complied with subsection (ii) by providing (a) the name of the model in the infringed image(s) and (b) either the volume, issue, and page numbers of the Perfect 10 Magazine containing those infringed images, or a reference to perfect10.com sufficient to allow Microsoft to locate those images on perfect10.com.  Later, starting on March 27, 2007, Perfect 10 sent to Microsoft copies of the actual images being infringed.  Zada Decl. ¶¶12-18, Exhs. 16-23.

To satisfy subsection (iii), Perfect 10 initially provided the URL in green that appeared at the bottom of the infringing search result, as Google had instructed.  *Id.* ¶11, Exh. 15.  Later, starting on March 27, 2007, Perfect 10 sent actual copies of the infringing web pages which contained both the URL of the infringing web page, as well as a copy of the infringed image.  *Id.* ¶¶12-18, Exhs. 16-23.

2.     Recently, Microsoft has removed some links in response to Perfect

1   10's notices, so it cannot claim that Perfect 10's notices are deficient.  Zada Decl.

2   ¶30, Exh. 31.  In fact, Ms. Weston testified that if Perfect 10 had provided

3   Microsoft with certain web page links (which Perfect 10 did), Microsoft would

4   have been able to disable those links by inputting them into Microsoft's URL

5   exclusion tool.  Weston Depo. 105:22-106:7.

6         3.    Ms. Weston could not point to any deficiencies in Perfect 10's

7   Notices.  Weston Depo. 155:3-8.

8         4.    That Perfect 10's notices provided sufficient information for

9   Microsoft to locate and disable access to infringing material is evidenced by the

10  fact that Yahoo! was able to remove links and images from its search results within

11  three days after receiving similar notices from Perfect 10.  Yahoo! did not request

12  additional information from Perfect 10 or suggest that Perfect 10's notices were

13  deficient in any way. Zada Decl. ¶¶31-33, Exhs. 32-35.

14        5.    Perfect 10 has demonstrated that Microsoft could have simply

15  inputted the URLs provided by Perfect 10 into the msn.com search box to locate

16  the infringing search results.  Zada Decl. ¶¶5, 19, Exhs. 4, 24.

17        6.    Ms. Weston testified that when a notice was deficient, she would

18  contact the copyright holder.  She did not do that in the case of Perfect 10.  Weston

19  Depo. 66:5-10.

20        The above evidence thus establishes that there is no genuine issue of

21  material fact that Perfect 10's notices complied with the DMCA.   However, the

22  Court does not need to make that determination to grant Perfect 10's present

23  motion.

24  **VIII. <u>CONCLUSION.</u>**

25        For all of the reasons set forth herein, Perfect 10 respectfully requests that

26  this Court grant its motion for partial summary judgment that Microsoft is not

27  entitled to a DMCA safe harbor for its alleged contribution to the infringement of

28  Perfect 10 copyrights via its search engine.  Alternatively, Perfect 10 requests that

1   this Court grant its motion for partial summary judgment on any or all of the three

2   issues set forth in Perfect 10's Notice of Motion.  Perfect 10 also respectfully

3   requests that this Court determine what material facts set forth in Perfect 10's

4   Statement Of Uncontroverted Facts, filed concurrently herewith, are not genuinely

5   at issue, pursuant to Rule 56(d) of the Federal Rules of Civil Procedure.

6

7   DATED: February 8, 2009                LAW OFFICES OF JEFFREY N. MAUSNER

8                                          By: *Jeffrey N. Mausner*

9                                              Jeffrey N. Mausner
                                               Attorneys for Plaintiff Perfect 10, Inc.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28